James C. STALLINGS, Plaintiff,

v.

Patricia R. HARRIS, Defendant.

No. 79–1051.

United States District Court,
W. D. Tennessee, E. D.

July 10, 1980.

T. Robert Hill, Jackson, Tenn., Michael T. Tabor, Jane E. Jarvis, West Tennessee Legal Services, Jackson, Tenn., for plaintiff.

Anne Buxton Sobol, U. S. Dept. of Justice, Washington, D. C., Michael C. Speros, Asst. U. S. Atty., Memphis, Tenn., for defendant.

## ORDER

WELLFORD, District Judge.

Plaintiff in this action seeks judicial review of a final decision of defendant Secretary denying his claim for disability benefits under §§ 216 and 223 of the Social Security Act, 42 U.S.C. §§ 416 and 423. In addition, plaintiff challenges regulations recently promulgated by the Secretary which purport to aid an administrative law judge in evaluating the effect of a claimant's vocational characteristics in cases in which the determination as to disability cannot be made solely on the basis of the medical severity of a claimant's impairment or his ability to do previous work. Jurisdiction is premised on 42 U.S.C. § 405(g).[1]

### I. Facts

Plaintiff Stallings is a 47 year-old male with a third grade education and work experience in unskilled employment. At the time his insurance coverage terminated on June 30, 1973, he was 41 years of age.

Plaintiff received Title II disability benefits from November 17, 1966, until March 31, 1969, apparently as a result of back problems. These benefits were terminated when the Social Security Administration determined that plaintiff had regained the functional capacity to perform substantial gainful employment. On February 13, 1978, plaintiff again applied for benefits, the denial of which are the subject of this appeal.

The Administrative Law Judge (ALJ) below found that although plaintiff's various impairments prevented him from performing his former work as a farmer, furnace operator, and punch press operator, he retained the functional capacity for light work throughout the relevant period. Under the regulations challenged here, the ALJ was then required to compare plaintiff's residual work capacity and his vocational characteristics—age, education, and work experience—against a series of formulae set out in the new regulations. If the factors in a particular case coincide precisely with a particular formula, the regulations direct a conclusion of either disability or nondisability. In this case, plaintiff's criteria did so coincide and a conclusion of nondisability was prescribed.

Plaintiff now challenges both the ALJ's findings of fact and the validity of the new regulations, which he asserts are in excess of the agency's statutory authority, violative of due process, and arbitrary and capricious.

### II. Constitutionality of the Regulations[2]

■ As indicated, the regulations in question, 20 C.F.R. §§ 404.1502–1513 and

1. The language of § 405(g) appears to confer jurisdiction on federal district courts to consider challenges to the validity of regulations such as those at issue here. Whether or not this is the case, jurisdiction might also be invoked under the Administrative Procedure Act, 5 U.S.C. § 701 et seq., or under 28 U.S.C. § 1331.

2. Although not raised by plaintiff, the Court is aware that some question exists concerning the propriety of the application of the new regulations to claims brought prior to the date of their effectiveness, February 26, 1979. One

decision, *White v. Califano*, 473 F.Supp. 503, 505–06 (S.D.W.Va.1979), held that the regulations may only be applied to claims brought before their effective date when their application would produce the same result as former practice would have produced. This approach has the wasteful result of requiring a remand for further, duplicative consideration. The better result, in the Court's view, is that reached in *Hicks v. Califano*, 600 F.2d 1048, 1050 (4th Cir. 1979), in which the court held that the regulations should be applied retroactively. This result is justified since the agency asserts, and in the Court's opinion has demonstrated, that the

§§ 416.902–913, purport to expand existing regulations to provide additional, detailed criteria to aid the agency in evaluating those disability claims which cannot be resolved solely through consideration of the claimant's medical impairments or his ability to do past work. In such cases, the regulations specifically define the adjudicative weight to be given to impairment severity, age, education, and work experience through a series of rules which indicate the disabling effect of numerous possible variations of functional and vocational characteristics. Except in cases in which nonexertional (e. g., mental, sensory, or skin) impairments are present or in which a combination of impairments significantly limits exertional capacity, the rules are conclusive when the necessary findings of fact regarding an individual's vocational and functional capacity coincide with all criteria of a particular rule. If no rule coincides precisely, no conclusion is directed and further consideration must be given.

The rules are based on vocational information taken from the Dictionary of Occupational Titles published by the United States Department of Labor and on information in numerous reference materials and treatises examining the effects of age, education, and work experience on vocational ability.

The regulations were promulgated on November 28, 1978, at 43 Fed.Reg. 55349 following a standard notice and comment rulemaking procedure. The effective date of the regulations, as indicated, was February 26, 1979.

Plaintiff asserts numerous, partially overlapping, arguments in support of his position that the regulations are invalid. He contends that 1) the regulations exceed the statutory authority conferred by 42 U.S.C. § 405(a) by contravening Congressional intent that disability determinations should be made individually; 2) the regulations are based upon administrative notice of various treatises and other sources that have been held to be insufficient to meet the agency's

obligation to consider vocational testimony in cases in which a claimant cannot perform past work; 3) they violate due process principles by creating conclusive, irrebuttable presumptions; 4) they substitute an "average man" test for the required individual determination; 5) they do not allow consideration of other relevant factors such as the need for and availability of further treatment, retraining, and rehabilitation; and 6) they are generally arbitrary and capricious.

It should be noted initially that the regulations have been upheld without elaborate discussion in two recent decisions, *Brown v. H. E. W.*, Civil No. 972347 (E.D.Mich. February 29, 1980); *Burroughs v. H. E. W.*, Civil No. 79–10253 (E.D.Mich. February 21, 1980), and cited with approval in two others, *Branch v. Harris*, Civil No. H–79–1552 (S.D.Tex. February 28, 1980); *Jones v. Harris*, Civil No. 3–79–487 (E.D.Tenn. March 18, 1980). These cursory treatments, however, do not definitively and finally dispose of the arguments raised by plaintiff here.

 In evaluating plaintiff's claim that the agency has exceeded its statutory authority, the Court's task is to determine whether the regulation in question is "reasonably related to the purposes of the enabling legislation." *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 369, 93 S.Ct. 1652, 1661, 36 L.Ed.2d 318 (1973); *Thorpe v. Housing Authority of the City of Durham*, 393 U.S. 268, 280–81, 89 S.Ct. 518, 525, 21 L.Ed.2d 474 (1969). The power of a federal agency is of course circumscribed by the authority granted by Congress. *Stark v. Wickard*, 321 U.S. 288, 309, 64 S.Ct. 559, 570, 88 L.Ed. 733 (1944). But an administrative agency must be allowed reasonable discretion in interpreting the scope of authority conferred. *Peters v. Hobby*, 349 U.S. 331, 345, 75 S.Ct. 790, 797, 99 L.Ed. 1129 (1955). An agency regulation will be upheld even if not within explicit statutory authority if it represents a legitimate, reasonable, and direct adjunct to the power expressly conferred. *United States v. Chesapeake and Ohio Railroad Co.*, 426 U.S. 500, 96 S.Ct. 2318, 49 L.Ed.2d 14 (1976).

regulations simply consolidate and elaborate upon existing standards and policies. In addi-

tion, plaintiff in this case has not contested the application of the regulations.

■ The regulations challenged here were promulgated by the Secretary of HEW pursuant to his authority under section 205(a) of the Social Security Act, 42 U.S.C. § 405(a):

The Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this title, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder.

This broad conferral of rule-making authority provides support for the Secretary's action here. In addition, the legislative history surrounding the promulgation of the regulations clearly reveals Congress' consistent view that detailed agency regulations are needed to meet three concerns: 1) insuring that disabled individuals receive uniform and equal treatment from the agency; 2) providing claimants with a better understanding of the disability program; and 3) providing a more workable framework for Congressional oversight of the program.[3] In addition to encouraging the promulgation of more precise, detailed regulatory guidelines, Congress has, since the promulgation of the regulations at issue here, deferred making further modifications of the disability program in order to observe the impact of the new regulations.[4]

In light of this legislative background, it is clear that the medical-vocational regulations are reasonably related to the purposes of the statute and that defendant has not exceeded the scope of its authority under § 405(a). As indicated more fully below, the Court further finds that the specific contentions asserted by plaintiff are without substantial merit and must be rejected.

Plaintiff contends that the agency's administrative notice of materials contained in studies and treatises constitutes an improper substitution for its burden of proof in cases in which it is determined that a claimant is unable to perform his or her previous work. The agency concedes that in such cases it has an obligation to demonstrate the availability of jobs that the claimant has the functional and vocational capacity to perform. *See, e. g., Gray v. Finch*, 427 F.2d 336 (6th Cir. 1970).

■ As defendant correctly notes, however, the regulations are consistent with this judicial burden because they require complete consideration of a claimant's individual circumstances. In place of vocational testimony that jobs exist or do not exist that a claimant can perform, the regulations have incorporated extensive information from the same sources that a vocational expert would utilize. In addition, this information is specifically related to previous individualized findings with respect to a claimant's functional and vocational capacity. Thus the regulations meet the agency's burden in a manner that may afford more consistent and uniform results.

■ In support of his position that the regulations create an irrebuttable presumption, plaintiff relies on *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973). In *Vlandis* the Supreme Court struck down a Connecticut statute defining residency for purposes of university tuition rates on the

---

3. *See, e. g.,* S.Rep.No.1987, 93rd Cong., 2d Sess., *reprinted in,* 1954 U.S.Code Cong. & Admin.News, pp. 3710, 3730–31; Subcommittee on the Administration of the Social Security Laws, 86th Cong., Administration of the Social Security Disability Insurance Program (Comm. Print 1959–60) (Harrison Subcommittee Report); S.Rep.No.744, 90th Cong., 1st Sess., *reprinted in,* 1967 U.S.Code Cong. & Admin. News, pp. 2834, 2880–82; Subcommittee on Social Security of the House Ways and Means Committee, H.R.8076: Disability Insurance

Amendments of 1977 at 7 (Comm.Print July 1977).

4. Staff of Subcommittee on Social Security of the House Committee on Ways and Means, Disability Insurance—Possible Areas of Subcommittee Action 14 (Comm.Print June 1978); Subcommittee on Social Security of House Ways and Means Committee, 95th Cong., 2d Sess., Proposed Disability Insurance Amendments of 1978 (H.R.14084) (Comm.Print November, 1978).

ground that it created an irrebuttable presumption and thus violated due process principles. The short answer to this theory is that the regulations do not create any presumption that requires the exclusion of relevant, rebuttal evidence, but rather direct a conclusion that is based on consideration of all relevant factors and evidence. Claimants are given full opportunity to submit proof on each of the underlying, adjudicative facts. For example, a claimant can attempt to "rebut" or submit evidence with respect to his physical and mental capacity, his work experience, his age, and his education. After the agency makes findings of fact on each of these criteria, a regulatory formula may direct a conclusion as to whether the claimant is or is not disabled. But this conclusion is irrebuttable only in the sense that any other agency decision is final and binding at the agency level.

The inapplicability of the *Vlandis* analysis is illustrated by the Supreme Court's subsequent decision in *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). In upholding a duration-of-marriage eligibility requirement for surviving wives and children of covered wage earners, the *Salfi* court distinguished the decision in *Vlandis*:

> In *Vlandis v. Kline* . . . [t]he Court held that where Connecticut purported to be concerned with residency, it might not at the same time deny to one seeking to meet its test of residency the opportunity to show factors clearly bearing on that issue. . . . Unlike the statutory scheme in *Vlandis*, . . . the Social Security Act does not purport to speak in terms of the bona fides of the parties to a marriage, but then make plainly relevant evidence of such bona fides inadmissible. . . . [T]he benefits here are available upon compliance with an objective criterion, one which the Legislature considered to bear a sufficiently close nexus with underlying policy objectives to be used as the test for eligibility. . . . [A]ppellees are completely free to present

evidence that they meet the specified requirements; failing in this effort, their only constitutional claim is that the test they cannot meet is not so rationally related to a legitimate legislative objective that it can be used to deprive them of benefits available to those who do satisfy that test.

422 U.S. at 771–72, 95 S.Ct. at 2470. Similarly, the irrebuttable presumption strand of due process analysis is not available to plaintiff in this case.

■ Plaintiff contends, moreover, that the regulations do not allow presentation of relevant evidence such as evidence of the need for treatment, retraining, or rehabilitation. But evidence that a claimant requires physical treatment or therapy would in fact be considered by the ALJ in determining the claimant's residual functional capacity. In addition, the regulations take administrative notice only of unskilled jobs, as to which the need for rehabilitative, vocational training is minimal.[5]

■ Plaintiff additionally asserts that the regulations improperly incorporate conclusions concerning the capacities of "average" individuals of a certain age, work experience or educational level. In support of this argument, plaintiff notes the possibility that in certain cases an individual of a particular age might be denied benefits when a person only a few months older would be deemed disabled.

These regulations, however, do not apply an average standard. Individualized scrutiny must be focused on the claimant's particular physical, mental, and vocational characteristics. In addition, the regulations specifically state that the age standards, which are concededly the most potentially arbitrary of all the criteria, are not intended to be applied mechanically in borderline situations. See § 404.1506. Moreover, work capacity does decline as age increases beyond a certain age; this is a logical and reasonable factor to be taken into account. Thus

---

5. For the same reason, the fact that plaintiff was rejected by a state rehabilitative service is *of little relevance to this case.*

the regulations' use of various age levels to affect the determination of disability is not irrational or illogical. Certainly, lines have been drawn. But line-drawing is inevitable in legislative decision making; the relevant question is whether the lines selected are rational and related to a legitimate legislative concern.

In summary, the Court concludes that defendant has acted within its statutory authority and has promulgated reasonable and rational regulations designed to meet Congress' desire for a more orderly, comprehensible, and uniform disability program. Plaintiff's challenge to the regulations must therefore be rejected.

### III. Determination Of No Disability In The Instant Case

In reviewing a denial of disability benefits under 42 U.S.C. § 405(g), the Court's task is to determine whether the Secretary's decision is supported by substantial evidence on the record as a whole. *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971). Substantial evidence is that evidence which a reasonable mind might accept as adequate to support the conclusion reached. *Walker v. Mathews*, 546 F.2d 814 (9th Cir. 1976).

Plaintiff's medical complaints in connection with his application for benefits included the following: arthritis, low back pain secondary to two back operations, high blood pressure, nervousness, a history of treatment for duodenitis, diabetes, an enlarged liver, poor eyesight, and diarrhea.

The ALJ found that although plaintiff's various impairments prevented him from performing his former work as a farmer, furnace operator, and punch press operator, he retained the functional capacity for light work throughout the relevant period. The ALJ further found that plaintiff's allegations of pain lacked persuasive content and that his alleged nonexertional (*i. e.* psychological) limitations did not decrease his capacity to perform a full range of light work.

Plaintiff's principal argument on appeal is that the ALJ erred in concluding that plaintiff's nonexertional difficulties did not prevent him from engaging in substantial gainful employment. He contends that the record demonstrates the existence of a severe psychological impairment and that the ALJ was therefore in error in applying the medical-vocational guidelines, which do not direct conclusions in cases involving such nonexertional limitations, merely providing a framework for consideration of all relevant factors. *See* Part 404 of Chapter III of Title 20 of the Code of Federal Regulations, Subpart P, Appendix 2, § 200.00.

■ The Court finds that the record below clearly provides substantial evidence to support the ALJ's conclusion that plaintiff's physical impairments allow him to perform light work. The evidence regarding plaintiff's psychological status is less clear, but again the ALJ's determination that plaintiff's nonexertional problems do not further limit his work capacity is supported by substantial evidence. Thus his decision to apply the medical-vocational guidelines was not erroneous and must be affirmed.

The record contains considerable medical evidence. On March 26, 1969, plaintiff was examined by Dr. Walter P. Griffey, Jr. in connection with a nervous condition and skin rash. Dr. Griffey expressed the view that both were the result of a chronic anxiety reaction following back surgery and prescribed thoraxine and back exercises. Dr. Griffey concluded that plaintiff's status "seems to be good in so far as he is able to walk around and do light activities." R. 145–46. In a subsequent letter of April 10, 1969, Dr. Griffey concluded that plaintiff was capable of "limited normal activity, which does not require the use of his back." R. 147.

Plaintiff was also examined by Dr. A. Roy Tyrer, Jr. on March 20, 1969. Dr. Tyrer observed that plaintiff was able to move with good agility and flexibility and that he should be fully capable of performing many types of light work. Dr. Tyrer added, however, that plaintiff was "fairly convinced that he cannot return to work and I doubt that anything is going to change this impression." R. 155–56.

Plaintiff was evaluated on August 27, 1969, by a psychiatrist, Dr. William C. Godsey. Dr. Godsey concluded that plaintiff appeared to be quite tense and expressed anxiety through various systems of his body. He further stated that plaintiff was able to relate adequately during the interview, that he appeared to be in contact with reality, and that he was able to handle his own funds. Dr. Godsey's diagnosis was anxiety neurosis and his prognosis was "guarded, in view of the number of somatic complaints and duration." R. 158–59.

Plaintiff was also examined on the same day by Dr. James G. McClure, an orthopedic surgeon. Dr McClure concluded that from an orthopedic standpoint "the patient is capable of a reasonable amount of standing, walking, stooping and bending and light lifting." He added further that "from a psychiatric standpoint he may or may not be suitable for employment." R. 162.

Plaintiff was examined by Dr. Griffey again in April of 1970. Dr. Griffey's notation indicates that plaintiff had been performing light farmwork and that he had "attempted" to work in a service station. At the time of the examination he was managing a beer tavern.[6] Dr. Griffey noted that plaintiff complained of recurrent back pain when he lifted anything heavier than 15–20 pounds.

In August of 1972 plaintiff was hospitalized briefly as a result of what Dr. Griffey described as marked mental agitation. Dr. Griffey's report noted that plaintiff was suffering from stomach difficulties and a nervous condition, as a result of which he was consuming from 4 to 12 beers per day. Dr. Griffey's diagnosis was duodenitis, alcoholism, and a past history of back surgery. R. 232–33.

Plaintiff was examined on September 15, 1978, by another psychiatrist, Dr. Edmon L. Green. Dr. Green's observations are fairly significant for purposes of this appeal:

> As far as schizophrenic reactions are concerned, there is no evidence of them be-

ing present now. He is well oriented to time, place and person. He does not have delusions or persecutions. He does not have grandoise ideas. He is in good contact with reality. His speech is coherent and rational and although he has a multitude of psycho or somatic or real somatic complaints, he is felt to be non organic and in good contact with reality.

. . . . . .

> Since he can drive a car, is not psychotic or organic, I see no psychiatric reason why his activity should be significantly reduced. He has had problems with his back but it is not felt that this is necessarily of a psychiatric disorder since he has had two surgeries. He is not taking any anti-psychotic medication at the present time. His judgment appears to be pretty good and it is felt that he can handle his own funds.

R. 240.

A somewhat more pessimistic psychiatric evaluation was reached by Dr. A. E. Harvey, who examined plaintiff in February of 1970. Dr. Harvey expressed the opinion that claimant had a chronic undifferentiated type schizophrenic reaction in partial remission. Plaintiff apparently had experienced two schizophrenic breakdowns earlier in 1958 and 1961.

Relevant nonmedical evidence in the record includes plaintiff's testimony at the hearing before the ALJ, which consists primarily of the complaints and allegations noted previously, and also a letter dated May 4, 1978, from a counselor at the Tennessee Vocational Rehabilitation Division denying plaintiff's request for rehabilitative services on the ground that he was too severely disabled to qualify. As defendant notes, however, the opinion of another governmental agency, based on criteria and standards different from those utilized by the Social Security Administration, is not binding.

---

**6.** Plaintiff contended that he was unable to sustain this employment because of his "nerves."

In conclusion, although the evidence concerning plaintiff's psychological difficulties is conflicting, the Court is constrained to hold that the ALJ's conclusions, affirmed by the Secretary, are supported by substantial evidence in the record viewed in its entirety.

Defendant's motion for summary judgment is therefore granted.

It is so ORDERED.