Marvin D. FISHER, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, .Defendant.

Civ. No. 80–6089–CV–SJ.

United States District Court, W. D. Missouri, St. Joseph Division.

April 17, 1981.

Ronald C. Clements, St. Joseph, Mo., for plaintiff.

Judith M. Strong, Asst. U. S. Atty., and Paul P. Cacioppo, Regional Atty. for Region 7, Dept. of Health and Human Services, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER REMANDING DISABILITY CLAIM

SACHS, District Judge.

Plaintiff seeks review of a final decision disallowing his claim for social security disability benefits. Cross-motions for summary judgment have been filed.

In his decision of June 2, 1980, the Administrative Law Judge (ALJ) accepted the contention that claimant is "unable to perform his past relevant work as delivery boy and cleanup man," but concluded he was not so disabled as to be unable to perform other work. Claimant's physical complaint, "curvature of the spine", also described as "severe scoliosis; status post scoliosis fusions", prevents him from "significant walking, standing, bending, reaching and carrying." Claimant testified to chest pain, calf pain, and pain at the top of his back; he also referred to a "nervous condition." He testified that sitting does not bother him and that he does not have any difficulty using his upper extremities so long as he does not have to lift and carry things. The nervous condition was described by the ALJ as "worrying about his job because of the fear that he is not performing it adequately because of his back problem."

There was no testimony from a vocational expert. The ALJ concluded that claimant's residual ability to perform sedentary work, together with his age (44 at the time of the hearing), and his high school educa-

tion required a ruling that he was not under a "disability" as defined in the Social Security Act. Claimant's prior skills were not, however, considered to be transferable to some hypothetical new position.

The principal issues on review are: (1) whether there was substantial evidence to support the ALJ's conclusions, in the absence of testimony from a vocational expert, and (2) whether psychological information presented subsequent to the decision requires reconsideration of claimant's mental and emotional fitness for a change of employment.

The psychological report, dated July 14, 1980, indicates a considerably greater "nervous condition" than was presented by claimant at the hearing before the ALJ. The report states that claimant resides with his father and is isolated from others. His only close relationship is with his father. He tends to avoid outside contacts and perceives the outside world as strange, unfamiliar and at times unreal. He has poor memory and poverty of ideas. While within the average range of intelligence, his personality problems caused a guarded prognosis for vocational rehabilitation.[1] It was recommended that claimant avoid situations requiring competitive productivity. The conclusion was offered that claimant "probably would best function in a 'sheltered' situation, which demanded rote operations." Further details from the report need not be stated.

The Appeals Council for the Social Security Administration rejected the appeal on September 22, 1980, because "Dr. Ruhnke's report despite its broad diagnosis and discouraging statements concerning the claimant's residual capabilities, is vague and speculative in its findings, does not actually demonstrate any worsening in the claimant's mental or emotional status, and is therefore, in light of the entire record, unpersuasive." An additional affidavit has been filed, drawing a "tentative conclusion" that claimant is a "learning disabled adult."

---

1. The Secretary's brief notes that claimant walks in a "hunched profile" and in a "shuffle" rather than normal gait. It is not clear whether this is wholly attributable to his back problem or may be related in part to his personality disorder.

Both issues on review will be ruled for claimant, and the case will be remanded to the Secretary for further consideration and a further evidentiary hearing.

■ With respect to the need for testimony from a vocational expert, the Court acknowledges that the ALJ's ruling has common sense appeal, absent the additional information concerning claimant's mental or emotional condition. Ruling cases from the Court of Appeals, however, and a growing list of district court decisions appear to require testimony from a vocational expert before a disability claim can be disallowed, if (as here) the claimant has carried the initial burden of showing inability to perform previous work.

The Social Security Administration has been seeking ways to simplify disability hearings and to avoid unnecessary expenses. Regulations adopted in 1979, setting forth "Medical-Vocational Guidelines" (20 C.F.R. Chapter III, Subpart P, Appendix 2), draw on agency experience, and were sympathetically described in an opinion by Judge Wellford last July. *Stallings v. Harris*, 493 F.Supp. 956 (W.D.Tenn.1980). This so-called "grid system" for determining disability was candidly intended to serve "in place of vocational testimony". l.c. 959. Early comment on the regulations by Judge Harper of the Eastern District of Missouri, however, noted his "concern" and "apprehension" that the grid system created by regulation would replace the use of the vocational counselor, contrary to procedures recommended by the Court of Appeals for the Eighth Circuit. *Halsted v. Harris*, 489 F.Supp. 521 (E.D.Mo.1980). Relying on Judge Harper's concerns and further indications from the Eighth Circuit that vocational expert witnesses are necessary where a change of employment is required, this Court last July remanded to the Secretary a case which turned on use of the grid system regulations. *Sherrer v. Harris*, Civ. Action No. 80–0014–CV–W–6 (July 26, 1980).

■ As stated in *Sherrer*, the Eighth Circuit has developed a body of law which is perhaps unique in its stringency regarding individualization of a finding of ability to engage in substantial gainful activity, and in its requirements relating to vocational evidence, once the burden of proof has shifted to the Secretary. See generally, "Eighth Circuit Survey", 13 Creighton L.Rev. 1132–40 (Summer, 1980). Our Court of Appeals has repeatedly recently ruled that it is "incumbent on the Secretary to call a vocational expert" to establish that the claimant does have that ability. *Woodward v. Secretary, HEW*, 626 F.2d 46, 47 (8th Cir. 1980); *Voyles v. Harris*, 636 F.2d 228 (8th Cir. 1980). Where the Secretary acquires the burden of proving that the claimant may engage in new gainful activity, the Court has stated, "we think it fundamental that the ALJ base his judgment upon the testimony of a vocational witness." *Warner v. Califano*, 623 F.2d 531, 532 (8th Cir. 1980). While these rulings have not directly spoken to the grid regulations, as a substitute for expert testimony, it is probable that the Court would be aware that its requirement of proof goes beyond the 1979 regulations, and is inconsistent with the purpose of those regulations. Doubtless the district judges in the Eighth Circuit will generally prefer to rely on the directives of our Court of Appeals, even though slightly out of context, and will consider it imprudent to rely on the regulations as a substitute for expert testimony. In order to avoid wasteful and time-consuming rehearings, Social Security Administration personnel should take into account evidentiary requirements likely to be imposed in this Circuit.

■ My conclusion to reject the *Stallings* case and the theory that the grid regulations avoid the need for expert testimony is bolstered by the generally adverse reaction of other district courts to "blind reliance" on the regulations by ALJs, even though the regulations may be treated as a "valuable" supplementary tool. *Fields v. Harris*, 498 F.Supp. 478, 492 (N.D.Ga.1980); *Walker v. Harris*, 504 F.Supp. 806, 812 (D.Kan. 1980); *Williams v. Harris*, 500 F.Supp. 214, 216 (W.D.N.C.1980); *Santise v. Harris*, 501 F.Supp. 274, 277 (D.N.J.1980); *Maurer v.*

*Harris*, 502 F.Supp. 320 (D.Or.1980).[2] As this case shows, people do not easily fit into pigeon-holes.

 Information supplied subsequent to the ALJ's ruling strongly indicates that the suitable sedentary work which claimant could perform is severely limited by his "nervous condition".[3] Responding to this, the Secretary cites authority for the contention that "mental conditions or other emotional disturbances, unless severe, are not enough to prevent an individual from engaging in substantial gainful activity." But the severity of claimant's mental disorder has not been meaningfully evaluated or taken into account in determining his ability to perform sedentary work. The ALJ did not have the pertinent information before him, but now that a significant report has been received on the subject the claim must be reconsidered, giving weight to the combined effect of all impairments. *Davis v. Califano*, 605 F.2d 1067, 1073 (8th Cir. 1979).

While the foregoing resume is deemed sufficient for purposes of remand, the Court commends to the ALJ for further consideration the exhaustive memorandum in support of plaintiff's motion for summary judgment, filed on March 2, 1981 by plaintiff's counsel, a staff attorney with Legal Aid of Western Missouri.

The Secretary's decision is REVERSED and the cause REMANDED for further proceedings consistent with this Opinion.

---

**2.** Recent decisions more compatible with *Stallings* and the 1979 regulations are *Vega v. Harris*, 636 F.2d 900 (2d Cir. 1981) and *Moguez v. Harris*, 512 F.Supp. 11 (D.Colo.1980). Rulings against claimants were remanded, however, on different grounds.

**3.** This significant condition is not considered in Rule 201.27, which the Secretary contends is controlling, and which requires a decision of "not disabled." 20 C.F.R. (1980 Revision) Parts 400 to 499, page 318.