**Rickey L. CROWE, Plaintiff,**

v.

**Patricia Roberts HARRIS, Secretary of Health, Education and Welfare, Defendant.**

No. CIV-1-79-189.

United States District Court, E. D. Tennessee, S. D.

April 24, 1980.

Clarence Shattuck, Shattuck & Durby, Chattanooga, Tenn., for plaintiff.

John C. Cook, Asst. U. S. Atty., John H. Cary, U. S. Atty., Chattanooga, Tenn., for defendant.

## MEMORANDUM

FRANK W. WILSON, Chief Judge.

This is an action for the judicial review of the final decision of the defendant, Secretary of Health, Education and Welfare, 42 U.S.C. § 405(g) denying the plaintiff's claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(i) and 423. The case is before the Court upon the administrative record and the defendant's motion for judgment on the pleadings.

The plaintiff filed an application for a period of disability and disability insurance benefits on May 17, 1978. (Tr. 73–76). The application was denied initially (Tr. 77), and upon reconsideration by the Social Security Administration. (Tr. 79–80). On November 9, 1978, the plaintiff requested a hearing. (Tr. 81). The administrative law judge, before whom the plaintiff and his attorney appeared, considered the case *de novo*, and on March 7, 1979, found that the plaintiff was not under a disability. (Tr. 11–21). The administrative law judge's decision thus became the final decision of the Secretary of Health, Education and Welfare, when it was approved by the Appeals Council on June 13, 1979. (Tr. 4–5).

The administrative law judge made the following findings:

1. The claimant met the special earnings requirements prior to September 9, 1977, the date he stated he became disabled, and continues to met them through at least September 30, 1982.

2. The claimant's impairments are status post laminectomy of the L4, 5 level and diskectomy (sic) with some residual loss of motion of the lumbar spine and pain and discomfort; status post surgical procedure of the left shoulder; and history of ulcer disease.

3. The claimant's allegation of severe disabling pain is not credible; and such pain does not restrict his physical ability to perform sedentary work.

4. The claimant is unable to perform his former relevant job as an electrician.

5. The claimant has the residual functional capacity for sedentary work as defined by section 404.1510(b) of Subpart P, Regulation No. 4.

6. The claimant is 31 years old which is defined as "younger individual."

7. The claimant has the equivalent of a high school education.

8. The claimant has relevant skilled work as an electrician.

9. Regulation 404.1513 and Rule 201.28, Table 1, of Appendix 2, Subpart P, Regulation No. 4, direct that the claimant, considering his maximum sustained work capacity, age, education and work experience be found "not disabled."

10. The claimant has not been under a "disability" as defined in the Social Security Act, as amended, at any time up to the date of this decision.

Such findings by the Secretary are conclusive if they are supported by substantial evidence in the record. *Wokojance v. Weinberger,* 513 F.2d 210, 212 (6th Cir. 1975). The sole function of this Court herein is to determine whether the Secretary's decision is based upon such evidence when examining the record taken as a whole. *LeMaster v. Weinberger,* 533 F.2d 337, 339 (6th Cir. 1976), *Allen v. Califano,* 613 F.2d 139, 147 (6th Cir. 1980). As the Supreme Court has said:

. . . we have defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as ade-

quate to support a conclusion." *Consolidated Edison Co. v. Labor Board*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). "[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *Labor Board v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660, [665] (1939) [Footnote reference omitted] . .

*Consolo v. Federal Maritime Com.*, 383 U.S. 607, 619–620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131, 140–141 (1966). The plaintiff, who was born on November 14, 1947, has completed the 10th grade and has served an apprenticeship as an electrician. (Tr. 34). For the previous 10 years he had worked as an electrician but has also worked on an assembly line in a foam rubber plant and as a wirer for cooking ranges. (Tr. 36–39, 84–86). The plaintiff alleged disability beginning September 9, 1977, at age 29, due to back trouble and shoulder surgery. (Tr. 73). He also specifically complained of the pain associated with his back problem (Tr. 70–71), as well as a history of an ulcer condition which he testified that he controls by diet and Maalox (Tr. 45–46).

The medical evidence of record begins with the records of Dr. Walter H. King, Jr., an orthopedic and general surgeon. (Tr. 133). Dr. King examined the plaintiff on August 25, 1976, for a complaint of left shoulder pain resulting from an accident at his job. (Tr. 39–40, 126). Plaintiff related to Dr. King that the pain radiated to his neck and left forearm. Injections had been unsuccessful at alleviating the pain. Physical examination revealed tenderness in the area of the humeral head (shoulder blade). Examination of plaintiff's neck and upper extremities was essentially unremarkable. X-rays of plaintiff's shoulder and cervical spine were essentially within normal limits. Dr. King's impression was chronic bicipital tendonitis and subacromial bursitis.

He hospitalized the plaintiff on September 7, 1976, for shoulder debridement (excision of bruised tissue) at which time Dr. King noted the dead and bruised tissue was excised from plaintiff's damaged shoulder region, and the remaining tissue was repaired. (Tr. 126). The plaintiff was discharged on September 10, 1976 (Tr. 126), and subsequently received a prescription for pain and suggestions for exercises. (Tr. 126).

On October 11, 1976, the plaintiff's range of motion remained limited for which Dr. King recommended physical therapy. (Tr. 126). By October 25, 1976, Dr. King noted plaintiff had 90 degrees range of motion without experiencing pain; further motion was possible, but symptoms began. Dr. King advised plaintiff to continue his current exercise regimen. (Tr. 126).

By November 15, 1976, the plaintiff's range of abduction motion was 75 degrees with external rotation somewhat limited. Dr. King felt plaintiff could return to light duty work. (Tr. 125). On December 6, 1976, the plaintiff had a motion limitation of approximately 30 degrees. (Tr. 125). Dr. King rehospitalized the plaintiff so his shoulder could be manipulated in an effort to further alleviate plaintiff's somewhat limited abduction. (Tr. 125). By December 21, 1976, Dr. King noted plaintiff had only occasional shoulder pain and adequate passive range of motion. (Tr. 125).

By January 11, 1977, Dr. King felt plaintiff's range of motion was adequate but not perfect. (Tr. 125). On January 29, 1977, plaintiff had good range of motion but stated that colder weather aggravated his pain. Plaintiff had 90 degrees of abduction motion, which was nearly symmetrical with plaintiff's right shoulder. (Tr. 125). Dr. King noted on February 28, 1977, that plaintiff had almost full shoulder abduction, the only minor limitation being upon internal rotation. (Tr. 125).

Although plaintiff continued to complain of shoulder pain on April 7, 1977, shoulder x-rays were negative. (Tr. 125). Injections provided good relief of his symptoms. The plaintiff related to Dr. King on May 5, 1977, that symptoms still persisted when performing heavy work. By June 21, 1977, the plaintiff was doing well; his range of shoul-

der motion had greatly improved, and he was able to work. (Tr. 125).

Plaintiff complained of recurrent symptoms on September 2, 1977, and Dr. King noted range of motion tests were positive for disc disease. (Tr. 125). Reflexes, sensation responses, and muscle strength, however, were within normal limits. (Tr. 124–125). Plaintiff was subsequently hospitalized; a myelogram was performed on September 12, 1977, and plaintiff was discharged the following day. (Tr. 124).

Dr. King examined plaintiff for a complaint of low back pain on September 16, 1977. (Tr. 124). Physical examination revealed fair range of low back motion and decreased flexion. The pain did not radiate to any other portion of plaintiff's anatomy. Deep tendon reflexes, sensation responses, and muscle strength testing of plaintiff's lower extremities remained within normal limits. Straight leg raising tests were negative. X-rays revealed no significant abnormalities. (Tr. 124). Dr. King's impression was a herniated nucleus pulposus (rupture of the pulpy portion of the nucleus) at L4–5, an impression which was confirmed by the results of plaintiff's September 12, 1977, myelogram.

Following complaints of persisting pain, Dr. King hospitalized the plaintiff on October 5, 1977, in order to perform a laminectomy at L3–5. (Tr. 112–118). Physical examination revealed some paravertebral muscle spasm and tenderness at L2–5. (Tr. 118). Surgery was performed; the degenerated material was excised, and plaintiff recovered uneventfully. (Tr. 115–117). Dr. King examined plaintiff post-operatively on October 19, 1977, at which time the physician noted the plaintiff was somewhat stiff but generally progressing relatively well. (Tr. 124). By November 16, 1977, Dr. King noted plaintiff was doing well and could return to light duty work. (Tr. 124).

Plaintiff's family physician, Dr. Preston C. McDow, noted he had intermittently examined the plaintiff for various somatic complaints between December 2, 1967, and December 3, 1977. (Tr. 141–144). Dr. McDow reiterated plaintiff's history of shoulder and back complaints and added that a November 30, 1977, upper gastrointestinal series x-ray revealed evidence of an active duodenal ulcer. (Tr. 142–144). The plaintiff was stable and allowed to go home and did not return for follow-up treatment for his ulcer. (Tr. 142, 144).

The plaintiff returned to Dr. King on December 13, 1977, stating that he had reinjured his back when he had jumped from a truck which had caught on fire. (Tr. 135). On January 3, 1978, Dr. King estimated that the plaintiff should be able to return to work in approximately two months. (Tr. 123, 135). Plaintiff continued to progress poorly on February 3, 1978, and Dr. King prescribed exercises. (Tr. 135). Since his condition did not improve, a myelogram was performed on July 11, 1978, which revealed a small, but persistent, pressure defect at L4. (Tr. 120).

Dr. Robert F. Patterson, an orthopedic surgeon (Tr. 134), examined the plaintiff on September 5, 1978, for complaints similar to those previously noted. (Tr. 127–132). During the history taking portion of plaintiff's examination (Tr. 131–132), the plaintiff reiterated his prior history. The plaintiff stated that his shoulder does not concern him, but that he experiences soreness when lifting anything overhead. Plaintiff stated his neck was sometimes sore but not painful. Plaintiff denied any numbness and added that coughing or sneezing did not exacerbate his symptoms. He reported pain and soreness in his low back much of the time. He stated he could lift approximately 35 pounds although he experienced back symptoms upon doing so. Plaintiff stated he could perform activities such as driving an automobile, pulling objects, walking, standing, kneeling, twisting, or climbing for varying lengths of time before any symptoms occurred. (Tr. 131–132). Physical examination revealed plaintiff could toe and heel walk and had an otherwise normal gait. (Tr. 127–129). Dr. Patterson did not observe any muscle spasm in any portion of plaintiff's anatomy during the course of examination. (Tr. 127). Plaintiff could squat normally without ex-

periencing any symptoms. Dr. Patterson noted that plaintiff could lift a 40 pound object and carry it across the examining room without complaints of pain. Plaintiff retained 70 percent of full back flexion. Good reversal of the lumbar curve was observed by Dr. Patterson, and plaintiff had no muscle spasm or trunk listing. Lateral and rotation movements were carried out to 75 percent of full range. Plaintiff did not experience pain upon bending or twisting although left rotation movements produced local lumbosacral discomfort without radiation. Straight leg raising tests from a seated position were carried out to 70 degrees bilaterally. Neck and shoulder examination was unremarkable, and plaintiff had no complaints. He retained full range of shoulder motion bilaterally. Neurological examination of plaintiff's upper extremities was normal; the examination included reflex reaction, skin sensation testing, and muscle power and coordination observation. Neurological examination of plaintiff's lower extremities was also within normal limits, revealing equal and active knee and ankle jerks. (Tr. 127). Plaintiff described no sensory deficit or weakness in either lower extremity. Plaintiff's Patrick's test (a test which distinguishes arthritis of the hip from pain due to a herniated nucleus pulposus) was not indicative of disc disease. Straight leg raising tests from a supine position were accomplished to approximately 70 degrees; plaintiff also performed well on the tests from a prone position. Lumbosacral x-rays revealed evidence of plaintiff's prior laminectomy with only moderate narrowing having occurred. The lumbosacral disc space remained normal as did all other remaining disc spaces. No evidence of spondylosis (stiffening or fixation of a joint) was present. Dr. Patterson noted plaintiff's history of laminectomy at L4–5 without marked neurological residuals and prior shoulder surgery without present residuals. (Tr. 128). Dr. Patterson concluded that the plaintiff could perform many types of light and medium work as long as frequent stooping or squatting motions were not required. (Tr. 128–130).

The plaintiff returned to Dr. King for examination on September 26, 1978, complaining of depression for which Dr. King prescribed antidepressant medication. (Tr. 135). On October 10, 1978, Dr. King rated plaintiff as having a 35 percent impairment to the whole body secondary to plaintiff's combination of back, neck and shoulder impairments. Dr. King felt the plaintiff was then unable to work. (Tr. 135). On November 9, 1978, Dr. King added he felt plaintiff would be unable to work for at least 12 months. (Tr. 135). Dr. King noted plaintiff's condition remained essentially unchanged when he examined him intermittently between December 13, 1978, and June 4, 1979. (Tr. 145).

Before making his finding that the plaintiff retained the residual functional capacity for sedentary work, the administrative law judge summarized the evidence and testimony then in the record. He noted that the plaintiff's most significant limitation involved pain and limitation of motion associated with his back, due to jumping from a truck in December, 1977. He noted that the plaintiff had not been precluded from working for the requisite period of time prior to December, 1977, and he also explained that the consulting physician's report disclosed no severe limitations with regard to functioning in the absence of significant stooping, bending and lifting. (Tr. 19). The administrative law judge also noted that the plaintiff's testimony did not indicate any inability to function physically in his actions on a day-to-day basis. Based upon the evidence shown and the analysis by the administrative law judge, the Court finds that the decision of the Secretary denying benefits is supported by substantial evidence.

The burden was upon Mr. Crowe to prove his entitlement to the disability insurance benefits which he sought. *Garrett v. Finch*, 436 F.2d 15, 18 (6th Cir. 1970); *Osborne v. Cohen*, 409 F.2d 37, 39 (6th Cir. 1969). The Secretary and her administrative law judge, as the fact finders, are given the power to weigh and evaluate the evidence where there is a conflict. *Lane v.*

*Gardner*, 374 F.2d 612, 616 (6th Cir. 1967). The mere presence of a physical or mental impairment alone is not enough to warrant an award of such disability benefits, for the plaintiff must also be precluded from engaging in any substantial gainful activity by reason of such impairment or a combination of impairments. *King v. Gardner*, 370 F.2d 652, 654 (6th Cir. 1967).

■ The consulting physician, Dr. Robert F. Patterson, Jr., who examined the plaintiff on September 5, 1978, found some evidence of chronic low back strain on a mechanical basis but no marked neurological residuals from the plaintiff's laminectomy. In Dr. Patterson's opinion, the plaintiff was capable of doing many types of light work and probably some types of medium work not requiring frequent and repetitive stooping and squatting activities as an integral part of the job requirements. (Tr. 128). It is within the Secretary's power to conclude that the medical evidence of record was more consistent with Dr. Patterson's diagnosis than that of Dr. King. The opinion of a physician such as Dr. King, as to the plaintiff's disability is not conclusive of such ultimate issue, but it must be considered and weighed by the Secretary along with the other contrary respectable opinions. *Halsey v. Richardson*, 441 F.2d 1230, 1236 (6th Cir. 1971).

■ The administrative law judge did find, however, that the plaintiff was unable to perform his usual occupation. This shifted the burden to the Secretary to show that, despite his impairments, Mr. Crowe retained the residual capacity to engage in some substantial gainful activity. *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975); *Gray v. Finch*, 427 F.2d 336, 338 (6th Cir. 1970). To satisfy this burden, the Secretary relied upon her new regulations which are designed to be utilized in determining disability when such a determination cannot be made on the basis of medical

severity alone or the ability to perform past work [1]. The administrative law judge found that Mr. Crowe was a "younger individual" as defined by Regulation 404.-1506(b), that he had an educational level equivalent to a high school education, that he had worked as a skilled electrician, and that he retained the capacity to perform sedentary work. Based upon such findings, the administrative law judge found to be applicable Rule 201.28, Table 1, of Appendix 2, Subpart B, of Regulations No. 4 following 20 C.F.R. § 404 *et seq.*[2]

■ In this Circuit a rule has developed which assures that disability claims are determined on an individualized basis. Once the burden shifts to the Secretary, she must show that the plaintiff has the ". . . vocational qualifications to perform specific jobs." *O'Banner v. Secretary of Health, Education and Welfare*, 587 F.2d 321, 323 (6th Cir. 1978). Testimony from a vocational expert is the preferred method for meeting this burden, but it is not required *per se. Id.*

■ Congress gave the Secretary broad authority to issue regulations in connection with her duties to administer the Social Security Programs, subject only to the limitation that such regulations may not be inconsistent with the provisions of the Social Security Act. 42 U.S.C. § 405(a). The plaintiff herein has not attacked the validity of the new regulations. Regulations issued pursuant to specific Congressional statutory authority are legislative in nature. *Anderson, Clayton & Co. v. United States*, 562 F.2d 972, 976 (6th Cir.) *reh. den.* (1977), *cert. den.* (1978). If such regulations are consistent with the statutory authority, adopted pursuant to proper procedure and reasonable, they have the force of law. *Id.*

■ There is substantial evidence in this record that the plaintiff's age, education, work experience, and residual functional capacity coincide with the criteria set out in Table No. 2 of Appendix 2.

---

1. These regulations became effective February 26, 1979, and are found in 20 C.F.R. Part 404 and Subpart P, Appendix to § 200.00, *et seq.*

2. 20 C.F.R. § 404.1513 provides, in pertinent part, that ". . . when the findings of fact made as to all factors coincide with the criteria of a rule, that rule directs a factual conclusion of disabled or not disabled."

The record showing that the decision of the Secretary is supported by substantial evidence, the final decision of the defendant Secretary must, therefore, be affirmed.

An order will enter accordingly granting the defendant's motion for judgment on the pleadings and dismissing this case.