Marie **MAURER**, Plaintiff,

v.

Patricia Roberts **HARRIS**, Secretary of Health and Human Services, Defendant.

**Civ. No. 79–1303PA.**

United States District Court, D. Oregon.

Nov. 21, 1980.

William J. Blitz, Malagon, Velure & Yates, Eugene, Or., for plaintiff.

Sidney I. Lezak, U. S. Atty., Judith D. Kobbervig, Asst. U. S. Atty., Portland, Or., for defendant.

## OPINION AND ORDER

PANNER, District Judge:

Plaintiff has petitioned for review of the Secretary's decision denying social security benefits. The Secretary's decision is not supported by substantial evidence, and I reverse and remand with directions to take vocational testimony to determine whether plaintiff can engage in other substantial gainful activity.

### FACTS

Plaintiff was injured on 29 July 1977. She was then 50 years old. On 12 April 1978 she applied for disability benefits. After an initial administrative denial, a hearing was held before an Administrative Law Judge (ALJ). Plaintiff was the only witness. Along with her testimony, the ALJ considered various medical reports and the relevant administrative records, including Oregon State Workers' Compensation records.

The ALJ found that plaintiff's previous work as a cook and restaurant owner/operator qualified as "semi–skilled" work, plaintiff's severe medical impairments included cervical spondylosis, spondylolisthesis, moderate lumbar spine, and carpal tunnel syndrome and that those impairments prevented the plaintiff from performing past relevant work.

The ALJ further found that she had the residual functional capacity to perform "light" work, possessed "transferable skills", that there was no evidence to show that plaintiff was incapable or unable to perform "substantial gainful" work, and any "testimony" to that effect was not credible. He then stated that Regulation 404.1513 and Rule 202.07 of Appendix 2, Subpart P "directed" that plaintiff be found not disabled and, considering the Rule as a "frame of reference," found that the "nonexertional" limitations did not significantly diminish her ability to work.

After plaintiff's request for administrative review was rejected, she filed a timely petition for review by this court.

### DISCUSSION

Once a plaintiff has proved that her disability precludes her from engaging in her former work, the burden shifts to the Secretary to show that the plaintiff can engage in other work:

It is incumbent on the Secretary at a minimum, to come forward with specific findings showing that the claimant has the physical and mental capacity to perform specified jobs, taking into consideration the requirements of the job as well as the claimant's age, education, and background.

*Hall v. Secretary*, 602 F.2d 1372, 1377 (9th Cir. 1979). As the Secretary concedes in her reply memorandum, *Hall* specifically encourages the use of a vocational expert. Despite *Hall*, the Secretary, through the ALJ, received *no* vocational testimony or evidence through such an expert. Instead, the ALJ purported to rely on the administrative notice provisions of Appendix 2 (20 CFR Subpart P), promulgated in November 1978 and effective in February 1979.

Plaintiff does not directly challenge the use of the new Appendix[1], but does challenge the lack of vocational expert testimony. I share the concerns of Judge Harper expressed in *Halsted v. Harris*, 489 F.Supp. 521, 525 (E.D.Mo.1980):

Whether or not this new grid system of placing a claimant in various categories, and then concluding the availability of residual skills, which system is based upon a lengthy and extensive study, would replace the use of the vocational counselor, is of some concern to this Court. The Eighth Circuit has clearly indicated that when a Social Security claimant has met his burden of proof with evidence indicating that he is unable to return to his prior employment, said burden transfers to the Secretary to prove claimant's ability to perform less rigorous occupations. . . . A vocational counselor is recommended for this purpose.

(citations omitted). Numerous courts have expressed preference for vocational expert testimony, *e. g., Ragsdale v. Secretary*, 623 F.2d 528, 530 (8th Cir. 1980); *Warner v. Califano*, 623 F.2d 531, 532 (8th Cir. 1980); *Wilson v. Califano*, 617 F.2d 1050, 1053–54 (4th Cir. 1980); *Hall*, 602 F.2d at 1377. I choose to follow the course set by Judge Williams in *Phillips v. Harris*, 488 F.Supp. 1161, 1166 (W.D.Va.1980):

In cases recently before the court in which the new regulations have been applied, the court has noted a tendency of administrative law judges to disregard specific facts of an individual case while overemphasizing the mechanical formulations of the Appendix II criteria. . . . [A]bsent a statement of the reasons felt to be in support of the given conclusion, the final decision of the Secretary cannot be deemed to be supported by "substantial evidence."

(citations omitted).

Here, there was no evidence before the ALJ that the plaintiff could engage in other work, and there was significant evidence that the plaintiff suffered from "non–exertional" limitations.

The only suggestions of work capacity are contained in Drs. Becker and Cassell's "hopes" that future treatment might help plaintiff's condition. The rest of the reports state that plaintiff is disabled, and that the prognosis for reentry into the job market is poor. Dr. Graham specifically stated that plaintiff "certainly is not a candidate for any type of job involving lifting such as her food service job required."

Despite these reports, the initial disability examiner "found" plaintiff capable of working. This initial disability determination cites Drs. Buck and Golden, Sacred Heart General Hospital, and the insurance company as "evidence sources". None of those reports support the examiner's conclusion.

1. I note that those courts that have considered the use of the Appendix have either implicitly or explicitly acknowledged the validity of the Appendix. *Parker v. Harris*, 626 F.2d 225, 234 (2d Cir. 1980); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980); *Hicks v. Califano*, 600 F.2d 1048, 1050–51 (4th Cir. 1979); *Morris v. Secretary*, No. 79 Civ. 6181 (S.D.N.Y. 10 September 1980); *Capoferri v. Harris*, No. 79–2930 (E.D.Pa. 14 July 1980); *Stallings v. Harris*, 493 F.Supp. 956, 957–61 (W.D.Tenn.1980); *Boyce v. Harris*, 492 F.Supp. 751, 751–52 (D.S.C. 1980); *Crowe v. Harris*, 489 F.Supp. 683 (E.D. Tenn.1980); *Phillips v. Harris*, 488 F.Supp. 1161, 1165–68 (W.D.Va.1980); *Halsted v. Harris*, 489 F.Supp. 521, 525 (E.D.Mo.1980); *Fains v. Harris*, 481 F.Supp. 30, 32 (D.Md.1979); *Irwin v. Califano*, 479 F.Supp. 80 (E.D.Tenn. 1979) reversed without opinion, 627 F.2d 1090 (6th Cir. 1980).

Apparently, the ALJ followed the initial determination and continued to ignore the medical evidence in favor of plaintiff. After considering the psychological report, and noting that the psychologist stated that the information "points to moderately severe emotional disturbance involving considerable focus on physical problems, psychophysiological disturbance, anxiety and depression," the ALJ dismisses this evidence, stating: "The evidence does not establish the existence of any severe medically determinable mental impairment as of the date the claimant was last insured." Finally, in "finding" transferability of skills, the ALJ states:

> The claimant has an extensive history of working as a waitress, cook, and owner–manager of a restaurant. As such, the work is properly classified in the Dictionary of Occupational Titles as semi–skilled or possibly even skilled. In any event the Dictionary of Occupational Titles sets forth the skills that would have been imparted by such work which would readily be transferable in other work of a "light" nature, as defined by the regulations, in the food service field.

■ In these circumstances, I find that there is no evidence to support the Secretary's decision. *Compare Wilson v. Harris*, 496 F.Supp. 746 (E.D.Wis. 1980) *and Thome v. Secretary*, No. 80 C 0171 (N.D.Ill. 24 July 1980) (finding of residual functional capacity under new regulations not supported by substantial evidence). The ALJ ignored the bulk of credible medical testimony, and instead apparently relied on his own "expert" opinion to determine "residual capacity," and "transferability". The regulations under which the ALJ here purportedly operated specifically provide that: "each of th[e] findings of fact is subject to rebuttal and the individual may present evidence to refute such findings." 20 CFR Subpart P, Appendix 2, § 200.00(a).

This situation is similar to *Wilson v. Califano*, 617 F.2d 1050, 1053–54 (4th Cir. 1980) where the Court noted:

> It is apparent that the ALJ misconceived his role as well as his burden in rebutting the claimant's *prima facie* case. We think an independent vocational expert was necessary to provide specific evidence of claimant's capacity to perform substantial gainful work which exists in the national economy.
>
> . . . Implicit in *Taylor [v. Weinberger*, 512 F.2d 664 (4th Cir. 1975)] is the recognition that the ALJ is not qualified to provide affirmative vocational evidence. Such evidence, rather, should be provided by persons who have, through training and experience in vocational counseling or placement, an up–to–date knowledge of job requirements, occupational characteristics and working conditions, and a familiarity with the personal attributes and skills necessary to function in various jobs.
>
> An ALJ who has heard a multitude of disability claims and vocational experts, and therefore feels knowledgeable in vocational matters, must resist the temptation to dispense with vocational expert testimony in favor of his own experience. Aside from the ALJ's lack of formal qualification and actual contact with the working community, it is manifestly unfair for the ALJ to rely on assumptions and "facts" which the claimant cannot, without reading the ALJ's mind, test or rebut.

(footnote omitted).

In addition to the failure to elicit vocational testimony, the ALJ here did not properly consider the "non–exertional" limitations. "When non–exertional limitations are present the regulations provide that the rules of Appendix II cannot be applied so as to *require* a finding of not disabled." *Phillips v. Harris*, 488 F.Supp. 1161, 1166 (W.D. Va.1980) (emphasis in original). See 20 CFR Subpart P, App. 2, § 200.00(e).

■ Where, as here, the ALJ has failed to make findings supported by substantial evidence, the ALJ may not "use" the new Appendix to "find" no disability. As pointed out in two recent cases in this district, the ALJ may not use the guidelines as a "frame of reference"–even though the reg-

ulations purport to allow such use—to evade the responsibility and requirement to hear vocational testimony and make detailed findings. *Turner v. Harris*, No. 80–315–RE (D.Or. 14 Oct. 1980); *Finley v. Harris*, No. 79–1299 (D.Or. 2 Sept. 1980).

### CONCLUSION

The plaintiff proved her prima facie case. The burden shifted to the Secretary to show that plaintiff was capable of working in other jobs. The Secretary failed to adduce any evidence on this point. The ALJ erroneously relied on new administrative regulations to "find" that plaintiff was capable of working and hence, not disabled. The decision of the Secretary is not supported by any evidence and is reversed and remanded to the Secretary for the consideration of expert vocational testimony, to determine plaintiff's residual functional capacity, the transferability of skills, and whether there are *specific* jobs that she can perform. *See Hall*, 602 F.2d at 1377–78; *Karhi v. Califano*, 484 F.Supp. 852 (D.Mont. 1980).