Bernice S. BELTON, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.

Civ. A. No. 81–3117.

United States District Court, District of Columbia, Civil Division.

April 7, 1982.

Charles R. McBrier, Jr., Washington, D. C., for plaintiff.

William H. Briggs, Jr., Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

Plaintiff brings this action under 42 U.S.C. § 405(g) for review of the decision of defendant Secretary of Health and Human Services denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act. Plaintiff's claim for benefits was heard and denied by an Administrative Law Judge (ALJ) with the Social Security Administration. Plaintiff requested that the Appeals Council of the Social Security Administration review the ALJ's decision, but that request was denied, making the ALJ's decision the final decision of defendant. The issue before this court is whether the Secretary's final decision is supported by "substantial evidence" in the administrative record or whether there is "good cause" as to necessitate remanding the case for further development. See 42 U.S.C. § 405(g).

Section 223(d)(2)(A) of the Social Security Act, 42 U.S.C. § 423(d)(2)(A) provides that a person "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ..." The plaintiff's vocational background is considered along with her "residual functional capacity" (what she can still do despite her limitations) in arriving at a disability decision. 20 C.F.R. § 404.1545.

Plaintiff in this case is a 58 year old woman with an eighth grade education who has worked for 37 years in food preparation and food service. For most of her career, plaintiff worked as a cook, but following numerous operations on her hands which left her unable to lift heavy pots, she moved from the kitchen to the salad bar, where she prepares cold dishes and desserts.

At the hearing before the Social Security Administration ALJ, plaintiff testified that

on September 27, 1976 she fell onto her back while on the job, sustaining injuries. Plaintiff testified that she was hospitalized immediately after the accident and spent about 10 days in traction. (Admin. Record at 39), but that neither the traction nor subsequent surgery completely corrected the injuries and she has been unable to return to work. According to plaintiff, her medical afflictions include arthritis in her back and foot (*Id.* at 45–6), a pinched nerve which causes pain along the entire length of one leg (*Id.* at 47), chest pains and spasms (*Id.* at 48), ganglions (*Id.* at 46), weakness in one arm and numbness in two fingers of her left hand (*Id.* at 50). (Plaintiff is right-handed.) She stated that she presently takes Motrin 600 and codeine to relieve her pain (*Id.* at 40) and that she cannot sit for more than one hour (*Id.* at 41) or stand for more than 30 or 35 minutes (*Id.* at 51).

In regard to her vocational abilities and education, plaintiff testified that she "ha[d] not done anything but cook" for 34 years (*Id.* at 53) and most of her experience has been in hotel and restaurant kitchens, although she has done some short-order cooking and "a little" baking. She attended school through the eighth grade and does not claim to read or write well.

On the basis of plaintiff's testimony, the testimony of a vocational expert, and medical evidence submitted by both parties, the ALJ found that plaintiff is not entitled to disability insurance benefits under the Social Security Act. Although he accepted plaintiff's subjective complaints of pain as credible and found physical impairments including a history of lumbar laminectomy and disc excision, osteoarthritis of the lumbosacral and cervical spines, and cervical radioculopathy, the ALJ determined that plaintiff retained some residual functional capacity to work. While the findings state that plaintiff is of advanced age and limited education and that she is no longer able to perform her past relevant work as a cook, the ALJ found that plaintiff has work skills which can be applied to meet the requirements of work functions for other jobs. Examples of such other jobs, according to the ALJ, are cashier in a cafeteria or cashier in a parking lot.

The plaintiff challenges the ALJ's findings to the effect that she is capable of performing "light work" (ALJ's Finding of Fact # 6) ("Finding # 6"), that she is a skilled worker (Finding # 9), and that her work skills are transferable to the job of a cashier (Finding # 9). Plaintiff claims that the evidence in the administrative record does not support the final decision of the ALJ and the defendant and that the decision should be reversed.

■ The first concern with the ALJ's findings of fact focuses on the inconsistency between Finding # 4 and Finding # 6, both of which address the plaintiff's residual functional capacity, or what she can do despite her limitations. *See* 20 C.F.R. § 404.1545. Finding # 4 states that:

"The claimant has the residual functional capacity to perform work-related functions except for work involving more than light exertion or significant bending, lifting, stooping, carrying, or prolonged walking, sitting or standing."

Finding # 6 states that:

"The claimant has the residual functional capacity for at least light work as defined in Regulation 404.1510."

Light work, which is defined in Regulation 404.1567(b), not 404.1510 as stated by the ALJ,

"involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."

After considering the conflicting medical testimony presented in this case, the ALJ might have determined that the plaintiff's condition was sufficiently improved since

her accident as to allow her to perform "at least" a full range of light work. Had this been the ALJ's clear determination, this court would lack power to challenge that finding had it been based on substantial evidence. However, the inconsistency between Findings 4 and 6 here creates a need for clarification. By stating that a woman who cannot endure prolonged walking, sitting or standing is capable of "at least light work", the ALJ has cast doubt upon his interpretation of the meaning of "light work" as the term is used in the determination of disability insurance benefits. This calls into question the appropriateness of the final decision, as it is impossible to tell what impact the ALJ's misunderstanding of "light work" may have had on his conclusion that benefits should be denied. This inconsistency in the findings of fact demands further attention on remand.

■ Plaintiff next challenges the ALJ's finding that plaintiff is "skilled" within the meaning of 20 CFR § 404.1568(c).[1] The testimony of the vocational expert that cooking requires the use of judgment in the combination and preparation of ingredients provides substantial evidence to support the ALJ's determination that the plaintiff has work skills. *See Maurer v. Harris*, 502 F.Supp. 320 (D.Or.1980), *Ortiz v. Secretary of Health, Education and Welfare*, 472 F.Supp. 5, (E.D.N.Y.1979), referring to former cooks as individuals with work skills.

■ We next consider whether, in light of our standard of review, the record justifies the conclusion that plaintiff's skills are transferable to the job of cashier in a cafeteria or cashier in a parking lot. At the outset, we note that the ALJ's reference to these two jobs as "examples" of work the plaintiff can perform (Finding # 9) does not accurately reflect the testimony of the vocational expert. When asked at the hear-

ing to identify jobs suitable for plaintiff, the expert responded that

"the [physical and educational] limitations ... would restrict her to sedentary work, which would very, very greatly limit the number of potential jobs that she could do ... Possibly she could work as a cashier in a cafeteria, parking lot, or someplace like that ... Really cashiering is about the only sort of work that you could possibly look for for an individual with this sort of background, with those limitations." (p. 56)

Clearly, the ALJ's finding that cashiering in a cafeteria and cashiering in a parking lot are but examples of work functions to which the plaintiff's skills will transfer is not supported by the substantial evidence in the administrative record.

■ Proceeding to the broader issue of transferability of skills, we cannot accept the Secretary's unfounded conclusion that the plaintiff's cooking skills will transfer to the functions of a cashier. Once a plaintiff has proven that her disability precludes her from engaging in her former work, the burden shifts to the Secretary to show that the plaintiff can engage in other work. *Maurer* at 321. Bearing in mind the vocational expert's unrefuted testimony that cashiering is "about the *only*" type of work "possibly" suitable for plaintiff, "it is incumbent upon the Secretary, at a minimum, to come forward with specific findings showing that the claimant has the physical and mental capacity to perform [the job of a cashier], taking into consideration the requirements of the job as well as the claimant's age, education and background." *Hall v. Secretary of Health, Education and Welfare*, 602 F.2d 1372, 1377 (9th Cir. 1979). *See Ortiz* at 7, in which a district court found that the "specialized nature" of the plaintiff's former occupation of cook in a

---

1. "Skilled work requires qualifications in which a person used judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity or material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise meas-

urements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts or figures or abstract ideas at a high level of complexity." 20 C.F.R. § 404.1568(c).

Spanish restaurant "cast some doubt on the transferability of his skills."

Skills acquired in one line of work may be transferable to other jobs and transferability "is most probable and meaningful among jobs in which

(i) The same or a lesser degree of skill is required;

(ii) The same or similar tools and machines are used; and

(iii) The same or similar raw materials, products, processes or services are involved."

20 C.F.R. § 404.1568(d)(2). A complete similarity of all three factors is not necessary for transferability (20 C.F.R. § 404.-1568(d)(3)), but here the ALJ has failed to show any nexus between cooking and cashiering which is strong enough to withstand challenge.

The testimony of the vocational expert does not establish that any similarity exists between the skills, tools, machines, raw materials, products, processes or services involved in cooking and cashiering. The expert seems to have relied almost exclusively on environmental considerations in developing his recommendations: "This is an environment she's thoroughly familiar with, aware of what's going on, so that this is why I suggested, for example, cashiering in a cafeteria, where she'd be at home in that environment ..." (Admin. Record at 58.) Why the vocational expert felt that plaintiff would feel at home in a parking lot is unclear.

When questioned as to plaintiff's ability to perform the *functions* required of a cashier, the expert's answers were not tailored to plaintiff's skills, as he had little knowledge of what her past jobs had entailed. Although he testified that many cooks develop mathematical skills by multiplying recipes and adjusting measurements (*Id.* at 58), he acknowledged that in many larger restaurants such calculation is performed by a manager. Since plaintiff neither testified at the hearing on the subject of her specific duties in past jobs nor performed arithmetic figuring, the vocational expert who heard her testimony was clearly unable

to state that she had transferable mathematical skills.

The expert's testimony that in a cashiering job "there is really no more required than the ability to read the numbers" (*Id.* at 61) is equally unconvincing, even assuming the accuracy of his statement that in "half the places you go nowadays, the cash register adds everything up, give you the total ... [and] tells the cashier how much change to give you," (*Id.*). To assess the skills required of all cashiers on the basis of this information is to ignore the needs of the many cashiers whose jobs have not been eased by the most modern equipment.

Furthermore, the expert's comment that plaintiff "is able to handle her own funds without any problem [and] gets by on very, very little money without any trouble, which would indicate to me that she's pretty swift with numbers" (*Id.* at 60) cannot support the ALJ's determination that plaintiff's work skills will transfer to the job of a cashier. Leaving aside the absurdity of using plaintiff's thriftiness and poverty to justify denying disability insurance benefits, there is, in any event, no connection between frugal spending patterns and an ability to operate a cash register. To the extent that the ALJ's finding of transferability was drawn from this comment or the vocational expert's other uninformed assertions that plaintiff has mathematical skills, it is based on insubstantial evidence and more information on this subject is needed.

Finally, the ALJ's findings of fact fail to show that jobs which plaintiff could perform exist in the national economy. This showing is part of the burden which the Secretary must carry. *Goodson v. Railroad Retirement Board*, 595 F.2d 881 (D.C. Cir.1979).

Defendant argues that specific testimony on this fact is not required because, as provided in 20 C.F.R. Chapter III, Appendix 2, § 200.00(b), the medical vocational regulations take administrative notice of the existence of specified numbers of jobs that exist throughout the national economy at the various functional levels (sedentary,

light, medium, etc.). That regulation refers to administrative notice of unskilled jobs only. Even if it pertained to skilled and unskilled jobs, Regulation 200.00(b) is inapplicable here because, as the ALJ acknowledged in Finding # 4, this plaintiff's physical limitations do not leave her capable of performing the entire range of light work defined in the Social Security rules. As plaintiff's residual functional capacity does not coincide exactly with the criteria of the Social Security rules, the existence of jobs reflected in those rules does not establish the existence of available jobs which plaintiff can perform. *See* 20 C.F.R. Chapter III, Appendix 2, § 200.00(b).

In summary, with respect to plaintiff's residual functional capacity (Findings 4 and 6), the transferability of plaintiff's skills to a cashiering job (Finding 9), and the availability of work which plaintiff can perform, the testimony and other evidence contained in the administrative record is simply insufficient to fortify the findings of fact from which defendant's final decision is drawn. We therefore remand this case to the defendant's Administrative Law Judge for clarification of the findings of fact and, if appropriate, for further hearings and evaluation of plaintiff's skills consistent with this Opinion. Defendant is directed to include in the administrative record evidence of the availability of jobs suitable for plaintiff in the national economy.

It may well be that defendant's reevaluation will grant plaintiff the relief she requests, failing which this cause may, upon petition, be reopened and reexamined by us in light of a complete record.

Accordingly, it is, by the Court, this 6th day of April, 1982, hereby

ORDERED that this case be remanded to the defendant for clarification of the findings of fact in response to this Opinion and for further development, if any, as indicated.

This cause is dismissed without prejudice to reopening upon request of either of the parties pursuant to a complete administrative record.