**Joseph F. SALISBURY**

v.

**Margaret HECKLER, etc.**

**No. Civ. No. K–83–950.**

United States District Court,
D. Maryland.

Jan. 8, 1985.

Raymond H. Simmons, Jr., Baltimore, Md., for plaintiff.

J. Frederick Motz, U.S. Atty., and Larry D. Adams, Asst. U.S. Atty., and Joseph Friedman, Social Sec. Admin., Baltimore, Md., for defendant.

FRANK A. KAUFMAN, Chief Judge.

Plaintiff's quest for Social Security disability insurance benefits, commencing as of October 24, 1980, was determined in his favor by the Administrative Law Judge (ALJ), (Tr. 13–14, 81), but thereafter unfavorably by the Appeals Council. (Tr. 230–

33). It is from that adverse determination which became the Secretary's final administrative decision, that plaintiff seeks review in this Court. The record discloses that plaintiff, born in 1929, suffers from "proztatotis [sic] diabetic, bladder contracture, vertigo, pain [and] numbness [in] leg muscles and right arm." (Tr. 81). The Government agrees that since October 24, 1980 and thereafter, plaintiff could not perform his former employment as "a senior water and sewage plant operator [which] involved some rather strenuous work activities and was, therefore, medium work." (Decision of Appeals Council, Tr. 7).[1] The Appeals Council concluded that as to plaintiff's exertional limitations, the grid regulations require the conclusion that plaintiff was not disabled. (Tr. 12 citing to CFR § 404.1569 and to Rule 202.14, Table No. 2 of Appendix 2, Subpart P, Regulations No. 4). As to plaintiff's nonexertional, environmental limitations, the Appeals Council determined that they did "not significantly affect [plaintiff's] residual functional capacity for light and sedentary work." (Tr. 12).

In his opinion, the ALJ, after reviewing all of the medical evidence, found plaintiff's testimony during the administrative hearing fully credible and determined that plaintiff could not perform even sedentary work and was totally disabled. (Tr. 18). By contrast, the Appeals Council found that "the claimant has the residual functional capacity to at least perform light work". (Tr. 11). In so doing, the Appeals Council wrote:

Based on the claimant's exertional limitations only, Section 404.1569 and Rule 202.14, Table No. 2 of Appendix 2, Subpart P, Regulations No. 4, direct a conclusion that the claimant, considering his residual functional capacity, age, education, and work experience, is not disabled.

The claimant's nonexertional limitations, that is, his environmental limitations, do not significantly affect his residual functional capacity for light and sedentary work and, therefore, considering that ca-

---

1. Accordingly, the burden is on the Government to go forward to show that plaintiff can do other work available in the national economy. *Hall v. Harris,* 658 F.2d 260 (4th Cir.1981).

pacity within the framework of the above rule, the claimant is not disabled. (Tr. 12). It is to be noted that in his decision, the ALJ made no reference to the grids.

■ It is also to be noted that the Appeals Council, in its decision, wrote that "the claimant's statements and/or testimony with respect to the severity of his symptoms and resulting limitations or the opinion of Dr. Ronald C. Kretkowski, [a treating physician], that the claimant is unable to work are not supported by the overall record," (Tr. 11), and that "the claimant's testimony cannot be given full credibility." (Tr. 10).

20 C.F.R. § 404.970(a) provides as follows:

The Appeals Council will review a case if—

(1) There appears to be an abuse of discretion by the administrative law judge;

(2) There is an error of law;

(3) The action, findings or conclusions of the administrative law judge are not supported by substantial evidence; or

(4) There is a broad policy or procedural issue that may affect the general public interest.

In repudiating the ALJ's findings of credibility, the Appeals Council did not, as a matter of law, exceed its power. As Judge Peck wrote:

It is beyond dispute that the Appeals Council, and the Secretary, have the power to conclude that testimony, even if uncontradicted in the record, is not credible, since the Secretary is entrusted with the duty of making all findings of fact. Since the statutorily-mandated deference to findings of fact runs in favor of the Secretary, not the administrative law judge, the Appeals Council has the power to do so even if the administrative law judge has determined otherwise.

*Beavers v. Secretary of Health, Education and Welfare,* 577 F.2d 383, 386 (6th Cir. 1978). In *Parris v. Heckler,* citing, *inter alia,* to *Beavers* Judge Russell stated:

The statutorily-mandated deference runs in favor of the Secretary and the Appeals Council, not the ALJ and the Appeals Council may reach conclusions differing from those of the ALJ . . .

733 F.2d 324, 326 (4th Cir.1984). However, as Judge Peck wrote in *Beavers,* a federal district court, on appeal by the claimant from the Secretary's final, adverse administrative decision has the responsibility to determine

whether there is substantial evidence to support the Appeals Council's decision, and when the administrative law judge has concluded that a witness's testimony is credible, that is an important factor to consider. The notion that special deference is owed to a credibility finding by a trier of fact is deeply imbedded in our law. The opportunity to observe the demeanor of a witness, evaluating what is said in the light of how it is said, and considering how it fits with the rest of the evidence gathered before the person who is conducting the hearing, is invaluable, and should not be discarded lightly.

*Beavers, supra,* at 387 (footnote omitted). If an Appeals Council decides to reject the credibility findings of an administrative law judge, or to disregard testimony which was clearly central to the administrative law judge's determination, it should do so expressly, identifying the considerations which led it to its conclusion. *Combs v. Weinberger,* 501 F.2d 1361 (4th Cir.1974).

*Id.* at 387. In *Parris, supra,* at 326, Judge Russell wrote that "evidence supporting a conclusion may be considered less substantial when an impartial, experienced examiner has drawn conclusions differing from those of the Appeals Council," noting also that "the substantial evidence standard itself is not modified by such disagreement" (at 327), and that the subjective evidence considered reliable by the ALJ "cannot take precedence over objective medical evidence or the lack thereof" upon which the Appeals Council may rely. In *Beavers,* Judge Peck wrote (at 388):

If the Appeals Council concludes that it must disagree with the credibility findings of an administrative law judge, then

it may do so, but only if there is substantial evidence undercutting the reliability of the testimony, evidence which "a reasonable mind might accept as adequate to support a conclusion" that the administrative law judge was wrong about the credibility of the witness, in spite of the advantage of having heard the testimony and lived with the case.

In *Parris,* Judge Russell wrote (at 326) that "the Appeals Council may reach conclusions differing from those of the ALJ ... if supported by substantial evidence."

In oral argument before this Court, counsel for the Government conceded that the record in this case discloses that the ALJ's findings as to the credibility of plaintiff's testimony before the ALJ are not only supported by substantial evidence, but are indeed supported by objective testimony and that accordingly, pursuant to the standards set forth in *Beavers* and in *Parris,* the Appeals Council in this case should not have refused to follow the ALJ's determination of such credibility. While, in a given case, a remand by a federal district court, with regard to such a credibility question might be in order so that further evidence could be taken, *see Breeden v. Weinberger,* 493 F.2d 1002, 1011–12 (4th Cir.1974); *see also Taylor v. Weinberger,* 512 F.2d 664, 668 (4th Cir.1975); *Jones v. Schweiker,* 551 F.Supp. 205, 208 (D.Md. 1984), evidence which might enable the Appeals Council or an ALJ to explain (which the Appeals Council did not do in the within case) why such credibility is open to attack, the Government during oral argument in this Court agreed that the record in this case is sufficiently well developed to make such a remand inappropriate and to permit the ALJ's credibility determination to stand and to be binding upon the Government. In this case, the plaintiff testified at length with respect to a number of limitations and impairments which rendered him unable to work: (1) Plaintiff suffers from incontinence for which he must wear a bag. (2) Plaintiff spends fifteen to thirty minutes every one and one-half hours taking care of the maintenance of the bag. (Tr. 73). (3) Plaintiff must drink plenty of water to avoid a burning sensation in his bladder. (Tr. 53). (4) Plaintiff must perform a blood test on himself with a glucose meter every two to four hours in order to regulate his blood sugar level. (Tr. 31). (5) Depending upon his blood sugar level, plaintiff often experiences a burning in his feet when he walks. (Tr. 53). (6) Plaintiff has an eye problem which has not cleared up as he had expected it would; it manifests itself in double vision. (7) Plaintiff wears an eye patch to correct that last mentioned problem, but still is unable to read at all or to write without a magnifying glass. (Tr. 57–58, 75–77). (8) Plaintiff experiences vertigo and nausea frequently and if he moves too fast, pain shoots down his neck and he falls. (Tr. 50). (9) Plaintiff has pain in his lower extremities when walking, sitting, or lying down. (Tr. 61–62).

The ALJ, finding all of plaintiff's testimony to be "fully credible", (Tr. 18), summarized it as follows:

He testified that he last worked on October 24, 1980. He was bleeding constantly and then had blood clots. He was bleeding especially when urinating. He was told that he had a tear near his prostate. He had an operation in October 1980. Because of continuing problems he had to have an additional operation in 1981. He now has to wear a bag. If he doesn't drink a lot of water, it causes burning when he urinates. He also has constant headaches. When he walks, he has a burning sensation of his feet. It feels like he is walking on pebbles. In January 1982, he bought a glucometer in order to attempt to control his diabetes. He must have a blood test with the meter every four hours. He also has a problem with his eyes. He now wears a patch over the left eye. If he doesn't wear the patch, he has double vision. He has vertigo and dizziness which lasts ten to fifteen minutes at a time. It is becoming more and more noticeable. It causes nausea and pain down the back of his neck. He also has pain in his hips, thighs, and legs. He has had three accidents when driving. His last accident was July 1982. He stated

that he will not drive anymore. He stated that he is able to do minor cleaning. However, he has other people do his major cleaning.

(Tr. 17).

The ALJ not only found this testimony credible, but also relied heavily on it in making his determination, reiterating many of these observations in his final conclusions, (Tr. 17–18). Also, during the hearing before him, the ALJ expressly commented that "light work would be a problem as the doctor indicated you might hurt yourself .. with this dizziness. And sedentary work it would require more eye hand coordination, you have your problem now with your vision. You seem to be a very honorable man to me.." (Tr. 66).

The Appeals Council specifically observed in its decision that "the administrative law judge obviously placed great weight on the claimant's testimony with respect to the severity of his symptoms and resulting limitation. In addition, the record contains two certifications by Dr. Ronald C. Kretkowski ... that state that the claimant is unable to work." (Tr. 8). Nevertheless, the Appeals Council discounted most of plaintiff's testimony, observing with respect to the limitations placed on plaintiff as a result of his bag maintenance, that

no anatomical or physiological abnormalities reflected in the record that could reasonably be expected to produce the functional limitations described by the claimant including his testimony that he is not able to work because it takes him 4 hours per day to maintain the bag he must wear because of some urinary incontinence or because he has to frequently do blood tests with a glucometer for control of his diabetes. Accordingly, the claimant's testimony cannot be given full credibility.

(Tr. 10). The record does include a report of one consultative doctor that plaintiff had "adapted well" to wearing his bag. (Tr. 8). Yet, "adapting well" does not mean necessarily that plaintiff is not still required to spend a substantial amount of time maintaining his bag. Nor is there any evidence

in the record which contradicts such assertion by the plaintiff. If indeed plaintiff *is* required to perform this task for one-half hour out of every two hours, then his capacity for even sedentary work could be severely curtailed.

There is also in the record a medical report which states expressly that "the patient needs to check his blood glucose with the use of his glucometer approximately four times a day in order to remain under good control." (Tr. 187). As to plaintiff's double vision, the Appeals Council merely stated that the doctor who diagnosed plaintiff's problem as a Right VI Cranial Nerve Palsy thought such symptom "generally clears within 2–3 months," (Tr. 189), but failed to comment upon that same doctor's observation that on a second visit, plaintiff's condition "appeared worse," and that "[t]he double vision is a severely disabling symptom, or that if it did not clear up within 2–3 months, a "muscle surgery would be necessary approximately 6 months." (*Id.* at 189). The Appeals Council did note that plaintiff was still wearing the eye patch at the August 12, 1982 hearing, over two months after the initial diagnosis, but it discounted the import of that fact with the comment that "the record contains no further evidence of treatment." (Tr. 9).

As to plaintiff's testimony regarding the severity and impact of his bouts of vertigo, light-headedness, numbness, weakness, and pain in his lower extremities, the Appeals Council commented that one result of electrodiagnostic studies showed that plaintiff "had stiffness of the neck and burning sensations [only] *at times*," (Tr. 8), and that such studies were only "compatible with *mild* neuropathy," (*id.* (both emphases included by Appeals Council)), and that plaintiff's personal physician reported in April, 1982 that there had been no evidence of diabetic neuropathy, "of motor dysfunction or abnormality of dextrous movements, gait, or station." (Tr. 187). Yet, once again, although the Appeals Council noted that this same doctor reported that claimants "main disability of two year duration has been vertigo and secondly, weak-

ness of the lower extremities," (Tr. 8), it did not seemingly recognize those findings as corroborative of the credibility of plaintiff's own testimony. Furthermore, that same doctor stated upon examination of claimant that plaintiff suffered from, *inter alia*, "[v]ertigo, secondary to vascular labyrinthitis," "[l]eft hip osteoarthritis," "[r]ecurrent lumbosacral strain," [and] "[l]ower extremity myopathy." (Tr. 187). While that doctor did state, as the Appeals Council noted, that there is "no disorganization of motor function," the doctor qualified that conclusion, by adding, "[e]xcept for the lower extremity." (Tr. 187).

The Appeals Council, in its decision, referred to the report of a doctor who stated that the claimant "was seen because of episodes of vertigo, nausea, headache, confusion, as well as severe back pain, and pain down both legs. His examination at that time and subsequent studies have shown the fact that he has vertebral-basilar transient ischemic episodes due to severe vascular disease of the brain and peripheral neuropathy, a mixed sensory and motor neuropathy." (Tr. 181). However, apparently without expressly considering that report in conjunction with claimant's own testimony before the ALJ, the Appeals Council concluded that it did "not find this severe diagnosis confirmed in the record." (Tr. 9).

The Appeals Council did rely upon the report of a consultative physician who expressed the view that plaintiff's neurological problems resulted in a mild disability at worst. (Tr. 184, 9). Yet, the Appeals Council did not refer to the fact that that doctor, who was not plaintiff's treating physician, also recommended that plaintiff "should have a psychological evaluation done, especially in the light ... [of] a [prior] nervous breakdown at one time and there seemed to be a lot of anxiety while [plaintiff] was giving history." (Tr. 184).

In sum, the Appeals Council's rejection of the ALJ's findings of credibility is not supported by substantial evidence. But that does not mean that the Appeals Coun-

cil should necessarily have affirmed the ALJ's grant of benefits or, to put it another way, would have committed error if it had remanded plaintiff's claim to the ALJ to take further evidence. That is so because the record does not include any in-depth evidence concerning whether plaintiff is a claimant who can or cannot perform any work available in the national economy.

In reaching its decision, the Appeals Council relied upon medical-vocational grid regulations in determining plaintiff's lack of disability. The validity of those regulations has been recognized by the Supreme Court in *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). Further, the Fourth Circuit has carefully considered precisely how the grids must be applied by the Secretary. Thus, in *Grant v. Schweiker*, 699 F.2d 189 (4th Cir.1983), Chief Judge Winter (at 192) held that the ALJ inappropriately, "conclusively" applied the grids "in the face of substantial evidence that [plaintiff's] exertional impairment ... was coupled with two nonexertional impairments", without making "specific findings" as to whether or not the nonexertional impairments did indeed exist. In *Smith v. Schweiker*, 719 F.2d 723 (4th Cir.1984), in a post-*Heckler* per curiam opinion, the Fourth Circuit wrote (at 725) that "not every malady of a 'nonexertional' nature rises to the level of a 'nonexertional impairment' "; and thus the relevant question becomes whether "a given nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable"; and that whether there is such an effect "is a question of fact."

In the within case, the Appeals Council determined that the grids "direct a conclusion" that plaintiff was not disabled with respect to his *exertional* limitations, and that plaintiff's *non* exertional limitations "do not significantly affect his residual functional capacity for light and sedentary work and, therefore, considering that capacity within the framework of the above rule, the claimant is not disabled." (Tr. 12, emphasis added). It is thus to be noted

that the Appeals Council appropriately did not consider the grids *controlling* with respect to plaintiff's nonexertional limitations. But, nevertheless, in the view of this Court, the Appeals Council's conclusions with respect to the severity of plaintiff's symptoms, set forth *supra,* and with respect to the impact of those limitations on plaintiff's capacity to perform light and sedentary work were not, for the reasons set forth *supra,* supported by substantial evidence. In that regard, it is to be noted that the record contains medical and other evidence of plaintiff's vision difficulties, environmental limitations resulting from his bouts of vertigo, nausea, light-headedness and weakness and pain in his lower extremities, (Tr. 56–70, 75–77, 181, 187, 189), and that limitations of that type potentially constitute "nonexertional impairments," *see* Social Security Rule 83–13 (Jan. 1983) at 62 (postural-manipulative impairments, visual impairments, environmental limitations), and are the kinds of impairments which have been held to limit a claimant's capacity for light and sedentary work. *See Belton v. Schweiker,* 535 F.Supp. 1319 (D.C. 1982). Seemingly, however, the Appeals Council inappropriately rejected the ALJ's findings of credibility, did not consider adequately the potential impact of plaintiff's symptoms upon plaintiff's capacity for light work, and, accordingly, failed to make the *specific findings* required by *Grant* and *Smith* with respect to whether plaintiff's alleged nonexertional limitations rose, as of October 24, 1980, to the level of nonexertional *impairments.*

That failure on the part of the Appeals Council requires a remand by this Court for further findings at the administrative level with respect to whether plaintiff's nonexertional limitations rendered plaintiff on October 24, 1980 unable to perform any work available in the national economy. On remand, further evidence should be presented bearing upon that issue, including the testimony of a vocational expert. *See Smith v. Schweiker, supra* at 725, *Grant v. Schweiker, supra* at 192. On remand, also, if the Secretary so desires, evidence relative to change, if any, in plaintiff's condition since October 24, 1980, may

be taken with respect to plaintiff's entitlement to benefits after the remand hearing. But as to plaintiff's entitlement to benefits from and after October 24, 1980 and to and including an ALJ's determination on remand of any change in plaintiff's October 24, 1980 condition, the question of whether plaintiff is or is not entitled to benefits with respect to said period shall be decided on remand solely by determination of whether plaintiff, concededly unable to return to his former employment and concededly suffering from the problems which the ALJ found to exist, could perform as of October 24, 1980 *any* work available in the national economy.

The remand hearing shall be held within seventy-five days from the date hereof. During oral argument before this Court, counsel for plaintiff and the Government agreed to those time requirements and also that the substantive contours of the remand proceeding should be as set forth in this opinion. This Court is accordingly today entering an appropriate remand Order.